IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

WALTER LEE CURRY,             )
                                     )
        Plaintiff,            )    TC-MD 200052N
                                     )
        v.                     )
                                     )
UMATILLA COUNTY ASSESSOR,    )
                                     )
        Defendant.      )    **DECISION**

Plaintiff appealed the 2019-20 real market value and maximum assessed value of property identified as Account 117880 (subject property). A telephone trial was held on May 18, 2020. Plaintiff appeared and testified on his own behalf. Douglas R. Olsen, Umatilla County Counsel, appeared on behalf of Defendant. Michael Verdin (Verdin), Defendant's manufactured home appraiser, testified on behalf of Defendant. Plaintiff did not submit exhibits, relying instead on his Complaint and attachments. Defendant's Exhibits A to C were received without objection.[1]

## I. STATEMENT OF FACTS

The subject property is a 1,426-square foot manufactured home situated on a 0.13-acre lot in Stanfield, Oregon. (*See* Def's Ex A at 1.) The subject property has three bedrooms and two bathrooms on a single floor. (*Id*.) Verdin determined its actual and effective age was 1978 and it was an average class 4 home. (*See id.*) The subject property also features a heat pump, concrete foundation, and a patio deck. (*Id*.) The Umatilla Board of Property Tax Appeals (BOPTA) affirmed Defendant's assessment by finding a total real market value of $73,560 and a

---

[1] Plaintiff raised an objection to the comparable sales selected by Verdin. That objection goes to the weight given to the sales rather than to the admissibility of exhibits.

maximum assessed value and assessed value of $71,950. (Compl at 2.) Plaintiff requests a real market value for the subject property of $50,000. (*Id*. at 1.) Plaintiff also requests a reduction in his assessed value consistent with the three percent limit contained in ORS 308.146. (*Id*. at 4.) Alternatively, Plaintiff requests a reduction in his assessed value to be fair and consistent with what other property owners pay. (*Id*. at 5.) Defendant requests that its assessment be upheld. (Ans at 1.)

A.   *Plaintiff's Evidence of Value*

Plaintiff testified that he purchased the subject property along with four 25-foot lots for $70,000 in 2013. It was originally listed for $90,000 for about four or five months. Plaintiff then sold two of the smaller lots in 2017 through a realtor for $20,000. Plaintiff testified that those were each arm's-length transactions. He paid cash for the subject property; no financing was or is available. Based on those sales, Plaintiff requests that the subject property's 2019-20 real market value be reduced to $50,000.[2] Plaintiff testified that he owns one other property in Stanfield and six other properties in Umatilla County. Plaintiff currently rents the subject property for $500 per month and rents another trailer "across town" to his daughter.

With respect to his three comparable sales (*see* Def's Ex B), Plaintiff testified that he purchased sale 1 from a realtor in 2014 then sold it for $57,500 in cash in September 6, 2018. He acquired sale 2 following county foreclosure, then listed it with a realtor. (*Id*.) It sold on June 29, 2018, for $36,000 in cash. (*Id*.) Plaintiff did not recall the details of sale 3. Verdin reviewed Plaintiff's comparable sales and made adjustments. Both sales 1 and 2 required significant adjustments for size, year built, bathrooms, skirting, carports and other features. (*See*

---

[2] Plaintiff reasoned that because he sold two of the lots for $20,000 the remaining value attributable to the 2013 purchase should be allocated to the subject property. The subject property is comprised of the remaining two 25 foot lots plus the manufactured home.

*id*.)  Sale 1 had an overall gross adjustment percentage of 63 percent.  (*Id*.)  Sale 2 had an overall gross adjustment percentage of 113 percent.  (*Id*.)  Sale 3 is located across the street from the subject property.  (*Id.*)  It sold for $65,000 on July 30, 2019.  (*Id.*)  Verdin adjusted for size, bedrooms, age, and a large general-purpose building for an overall gross adjustment percentage of 24 percent.  (*Id.*)  The adjusted price was $68,648 or $52.16 per square foot.  (*Id.*)  Plaintiff's comparable sales were all located within .36 miles of the subject property.  (*Id.*)  Verdin testified that Plaintiff's first two sales were too old and small to be comparable to the subject property. He testified that sale 3 was a good comparable.  Verdin noted that sale 3, after adjustments, indicated a real market value similar to the current roll real market value.[3]  (*See id.*)

Plaintiff testified that the land values are important, noting that the subject property's land value is high at $33,000 for the 2019-20 tax year, where it had been only $24,530 in the prior tax year.  (*See also* Compl at 9.)  He wanted to know the land values of all the comparable sales.  Verdin testified that total real market value is determined without separately breaking out land and improvements.  Plaintiff testified that one of Defendant's employees admitted the subject property was overvalued, but Defendant rejected her recommendations.  Verdin testified that Defendant's employee had offered to enter a stipulated agreement, but Plaintiff rejected it. Verdin asserted that it was not an admission by Defendant that the subject property was overvalued, but rather an attempt to settle the case without further litigation.

B.    *Defendant's Evidence of Value*

Verdin testified that he has been Defendant's manufactured home appraiser for three and one-half years and described his process for valuing homes.  He testified that there are four

---

[3] The roll real market value of the subject property is $49.09 per square foot compared with sale 3, which has a real market value of $49.03 per square foot.

classes of manufactured homes with class 7 being the highest class and 4 being the lowest. Verdin testified that Stanfield is part of the Umatilla-McNary market area, which is where he obtains relevant sales data and market trends. Hermiston is near Stanfield but a superior property market. Verdin does not generally track whether sales were cash or financed but does look for foreclosure sales. He testified that he looked for comparable sales in Stanfield, but most were from the 1990s, therefore not similar in age to the subject property.

Verdin identified three comparable sales. (*See* Def's Ex A.) Sale 1 was located ten miles north of the subject property in a similar neighborhood and sold for $95,000 on August 31, 2018. (*Id*.) Verdin adjusted sale 1 for size, age, lack of a heat pump, lack of a concrete foundation, and a general-purpose building for an adjusted sale price of $91,152 or $63.30 per square foot. (*See id.*) Sale 2 was also located 10 miles from the subject property in a similar neighborhood and sold for $114,500 on June 27, 2018. (*Id.*) Verdin testified that sale 2 had an addition and was class 5, so it required some additional adjustments, though it was similar in age and size to the subject property. (*See id.*) Verdin found an adjusted sale price for sale 2 of $90,388 or $53.80 per square foot. (*Id.*) Sale 3 was the closest to the subject property located six miles north but in a nicer neighborhood. (*Id.*) Sale 3 sold for $116,900 on November 9, 2018. (*Id.*) Verdin noted that it was also a higher class but smaller than the subject property. (*See id.*) It was similar in age and had a concrete foundation and heat pump. (*See id.*) Sale 3 had an adjusted sale price of $124,105 or $107.73 per square foot. (*Id.*)

C.    *Plaintiff's Maximum Assessed Value Argument*

Plaintiff testified that the subject property's 2019-20 real market value was very close to its maximum assessed value, so he is paying taxes on almost 100 percent of the subject property's value, whereas other properties in the county are paying on significantly lower

assessed values. The subject property's 2018-19 real market value was $63,580, an amount lower than its 2018-19 maximum assessed value, so that was also its assessed value. The subject property's 2019-20 real market value exceeded its maximum assessed value, resulting in a 2019-20 assessed value that increased by more than three percent over the prior year.

At trial, Verdin gave an overview of Oregon's property tax system, explaining how real market value (and therefore assessed value) can increase by more than three percent in a year. He testified that market values were lower from 2011 to 2014, but the market rebounded by 8 to 10 percent per year after that time.

## II. ANALYSIS

The issues before the court are the subject property's 2019-20 real market value, maximum assessed value, and assessed value.

Plaintiff, as the party seeking affirmative relief, bears the burden of proving his case by a preponderance of the evidence. ORS 305.427.[4] Preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002), citing *King v. Dept. of Rev.*, 12 OTR 491 (1993). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality and other

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Etzger v. Clatsop County Assessor*, TC-MD 120534D, WL 5350257 at *3 (Oct 30, 2012).

A.    *Real Market Value*

Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2019-20 tax year was January 1, 2019. *See* ORS 308.007; 308.210. Real market value is to be determined by the methods and procedures adopted by the Oregon Department of Revenue. ORS 308.205(2). By rule, three approaches to value must be considered: (1) the cost approach; (2) the sales comparison or comparable sales approach; and (3) the income approach. OAR 150-308-0240(2)(a). Even though all three approaches must be considered, all three may not be applicable to the valuation of the subject property. The applicable valuation approach is a question of fact that will be determined on the record. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979). Here, the parties only considered the sales comparison approach.[5]

1.    *Plaintiff's purchase of the subject property*

To prove real market value, Plaintiff relies partly on his purchase of the subject property in 2013 for $70,000 and subsequent sale of two of the lots included in that purchase in 2017 for $20,000. When determining real market value, "[a] recent sale of the [subject] property * * * is

---

[5] "The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant when an adequate supply of comparable sales is available." *The Appraisal of Real Estate,* 376 (14th ed 2013).

important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). The crucial elements are that the sale be "recent" and that it represents a voluntary, "arm's length" transaction.

Plaintiff testified that the sales were arm's-length and Defendant submitted no evidence to the contrary. Whether the sale was recent as of the January 1, 2019, assessment date, is less easily resolved. The Oregon Supreme Court has stated that "[w]hether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of assessment." *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974). In the past, this court has held that even a few months difference between the sale date and the assessment date result in a finding that the sale was not recent if market conditions have changed. *See e.g. Yang v. Benton County Assessor*, TC-MD 150273D, 2015 WL 6684970 at *4 (Or Tax M Div Nov 2, 2015).

Here, the original purchase occurred in 2013, more than six years from the assessment date. Defendant testified that the market has increased between eight and ten percent per year above the 2014 values. Plaintiff has not provided any evidence to the contrary. The court finds this sale was not "recent" and is not persuasive of real market value.

Plaintiff notes that the 2013 purchase included four lots, two of which were sold for $20,000 in 2017. Certainly, a 2017 sale is more recent to the assessment date. However, sales of unimproved lots are not probative of the value of an improved lot. Plaintiff argued at trial that the subject property's land value was overstated. Comparable land sales may be relevant to that issue, but Plaintiff made no adjustments to his sales and presented no information concerning

how the lots sold in 2017 compared to the subject property lots with respect to size, topography, and other relevant details. The court finds no basis to reduce the subject property's land value.

      2.        *Plaintiff's comparable sales analysis*

In using the sales comparison approach "only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used." OAR 150-308-0240(2)(c). All sales used must be "verified to ensure they reflect arms-length market transactions." *Id*. Plaintiff presented three comparable sales. The first two sales required substantial adjustments for differences in characteristics—sale 1 was adjusted 63 percent and sale 2 was adjusted 113 percent. If "large adjustments are required, one must conclude that either the method is faulty or the [properties] are not truly comparable. * * * [L]arge adjustments make any comparison unreliable." *Agripac, Inc. v. Dept. of Rev.*, 11 OTR 371, 376 (1990); *see also Schmidt v. Clackamas County Assessor*, TC-MD 140134C, 2015 WL 782990 at *7 (Or Tax M Div Feb 24, 2015) (finding properties not comparable where adjustment percentage exceeded 35 percent of the sale price). The court finds that Plaintiff's first two sales are not comparable to the subject property due to the large adjustments required.

Sale 3 required fewer adjustments and appears to be the most similar to the subject property. Verdin agreed that Plaintiff's sale 3 is a good comparable sale but noted that it tends to confirm Defendant's real market value over Plaintiff's requested real market value of $50,000. The subject property's 2019-20 roll real market value is $73,560 and the indicated real market value of sale 3 is $68,648. Sale 3 does not support Plaintiff's requested real market value of $50,000.

      3.        *Defendant's comparable sales analysis*

  Defendant presented three comparable sales indicating a value range of $90,388 to

$124,105. All three sales are occurred in 2018 and were at least six miles distant from the subject property. No location adjustments were made even though Sale 3 was in a superior location. Sales 2 and 3 were of a higher class than the subject and required the largest adjustments. Sale 1 was the most similar with identical lot size, similar square footage, age and features. Sale 1 indicates a value of the subject property of $91,152. The court finds that the evidence supports an overall value range for the subject property of $68,648 to $91,152. Value "is a range of value, rather than an absolute." *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977) (noting that it is "almost impossible" to prove a reduction of value less than ten percent of the roll value). The court concludes that the 2019-20 roll real market value is already on the low end of a reasonable range of value and finds no compelling reason to upset the assessed real market value on the evidence presented.

B.     *Plaintiff's Assessed Value and Maximum Assessed Value Claims*

The court begins with a brief overview of Oregon's property tax system. Before Measure 50[6], property was assessed on its real market value. *Nau v. Clackamas County Assessor*, TC-MD 010664E, 2003 WL 21254437 at *3 (Or Tax M Div Mar 3, 2003). At that time, a property's assessed value equaled its real market value. Measure 50 introduced the concept of maximum assessed value. *Id.* The maximum assessed value for all property was initially calculated as "the property's real market value for the tax year beginning July 1, 1995, reduced by 10 percent." Or Const, Art XI, §11(1)(a). Starting in 1997, "the property's maximum assessed value shall not increase by more than three percent from the previous tax year."[7] Or Const, Art XI, §11(1)(b); *see also* ORS 308.146(1). After Measure 50, the assessed value is the lesser of the real market

---

[6] Measure 50 was an amendment to the Oregon Constitution passed by voter referendum in 1997.

[7] This limitation on maximum assessed value increases is subject to numerous exceptions not relevant here.

value or the maximum assessed value. Or Const, Art XI, §11(1)(b), (f); *see also* ORS

308.146(2).[8]  With that background in mind the court will consider Plaintiff's claim regarding his

maximum assessed and assessed values.

      1.     *Whether assessed value can increase more than three percent per year*

Plaintiff argues that Defendant violated ORS 308.146(1) by increasing his assessed value

more than three percent above the prior year.  ORS 308.146(1) provides:

> "The maximum assessed value of property equals 103 percent of the property's
> assessed value from the prior year or 100 percent of the property's maximum
> assessed value from the prior year, whichever is greater."

*See also* Or Const, Art XI, §11(1)(b).  The three percent limitation is on maximum assessed

value, not assessed value.  *Gall v. Yamhill County Assessor*, TC-MD 060207C, 2006 WL

1667453 (Or Tax M Div June 15, 2006) (a nine percent increase to assessed value allowed by the

court).  As discussed above, a property's assessed value equals the lesser of its real market value

or maximum assessed value.  This court's opinion in *Comcast* provides a helpful appendix

demonstrating how the assessed value, but not the maximum assessed value, can increase by

more than three percent over the prior year.  *Comcast v. Dept. of Rev.*, 22 OTR 233, 260 (2016).

Where maximum assessed value exceeds real market value in one year and real market value

exceeds maximum assessed value in the next year, the assessed value may increase by more than

three percent.  *Id.*  Similarly, here the subject property's 2018-19 real market value was lower

than its maximum assessed value, meaning the real market value was also the assessed value that

year.  The assessed value may increase by any amount provided it equals the lesser of the real

market value or maximum assessed value, as was the case for the 2019-20 tax year.  As

---

[8] Measure 50's changes were subsequently adopted by the legislature and codified.  Plaintiff does not allege
any discrepancy between the relevant constitutional provisions and their corollary statutes.  For ease of reference,
the court refers to the statutory provisions.

discussed above, the three percent limitation is on increases in maximum assessed value, not assessed value. The court concludes that there was no violation of the relevant statutes or constitutional provisions.

2. *Fairness and uniformity arguments*

Plaintiff argues that because the subject property's maximum assessed value and real market value are so similar he is paying taxes on almost 100 percent of his real market value, which is unfair considering what other property owners are paying.

"After the passage of Measure 50, a taxpayer's claim based on lack of uniformity in the amount of tax assessed as compared with neighboring properties is unlikely to succeed because the constitutional provisions requiring uniformity do not apply to maximum assessed value." *Deschutes County Assessor v. Leszar*, TC-MD 170099N, 2018 WL 334450 at *7 (Or Tax M Div Jan 9, 2018.) As discussed above, Oregon's property tax system is complex and over time necessarily has resulted in some lack of uniformity:

> "in one sense [maximum assessed value] is somewhat artificial or arbitrary. That is inherent in the overall scheme of section 11. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1 and Article 1, section 32."

*Ellis v. Lorati*, 14 OTR 525, 535 (1999). The court concludes that no reduction in either assessed value or maximum assessed value is authorized.

III. CONCLUSION

Having carefully considered the evidence, the court concludes that the subject property's 2019-20 roll real market value should be sustained. The court further concludes that Defendant did not impermissibly increase the subject property's assessed value because the three percent limitation on increases to maximum assessed value contained in ORS 308.146 is not applicable

to the assessed value. Finally, the court concludes that Plaintiff's uniformity claim must be

denied because constitutional uniformity provisions do not apply to maximum assessed value.

Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at <u>https://www.courts.oregon.gov/courts/tax</u>*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on October 23, 2020.*